(JACK M. MIDDOUGH, ESQ.)
HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, LLP
40 Paterson Street, P.O. Box 480
New Brunswick, NJ 08903
(732) 545-4717
Attorneys for Defendants, Sgt. Nicolas Salamone, Cpl, Bradley Ellmann and Chester Township

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK, NEW JERSEY

| | |
|---|---|
| *Plaintiff,*<br>MICHAEL WILDEY JR.<br><br>       vs.<br><br>*Defendants,*<br>SGT. NICOLAS SALAMONE, in his official and individual capacities, CPL. BRADLEY ELLMANN, in his official capacity and individual capacities, and CHESTER TOWNSHIP, NEW JERSEY | Honorable Jamel K. Semper, USDJ<br><br>CIVIL ACTION NO. 26-cv-01672<br><br><br>**<u>ELECTRONICALLY FILED</u>** |

## BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

HOAGLAND, LONGO, MORAN,
  DUNST & DOUKAS, LLP
Attorneys for Defendants,
Sgt. Nicolas Salamone, Cpl, Bradley
Ellmann and Chester Township
40 Paterson Street
P.O. Box 480
New Brunswick, NJ 08903
(732) 545-4717

JACK M. MIDDOUGH, ESQ.
On the Brief

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................1

COUNTERSTATEMENT OF FACTS ...............................................................2

LEGAL ARGUMENT

POINT I

PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION.............4

POINT II

SUMMARY JUDGMENT AT THIS STAGE IS PREMATURE .........................11

CONCLUSION ...............................................................................................13

# TABLE OF AUTHORITIES

**Cases**

Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.,
42 F.3d 1421 (3d Cir. 1994) ........................................................................4

Anderson v. Davila, 37 V.I. 496 (3d Cir. 1997) .......................................8, 9

Ashcroft v. ACLU, 542 U.S. 656 (2004)...................................................5

Conchatta, Inc. v. Evanko, 83 Fed. Appx. 437 (3d Cir. 2003) ..............8, 9

Elrod v. Burns, 427 U.S. 347 (1976) ........................................................9

Hohe v. Casey, 868 F.2d 69 (3d Cir.), cert. denied, 493 U.S. 848,
110 S.Ct. 144, 107 L.Ed.2d 102 (1989)..............................................8

Holland v. Rosen, 895 F.3d 272 (3d Cir. 2018)......................................4, 5

Lewis v. Kruger, 446 F.2d 1343 (3d Cir. 1971) .......................................11

Mazurek v. Armstrong, 520 U.S. 968 (1997) ...........................................4

Morales v. Maxwell, 600 F. Supp. 3d 497 (D.N.J. 2022)......................5, 10

Reilly v. City of Harrisburg, 858 F.3d 173 (3d Cir. 2017).........................5

**Statutes**

N.J.S.A. 2A:58D-2(b) ...............................................................................7

**Other Authorities**

First Amendment................................................................... 3, 5, 8, 9

Fourth Amendment ...................................................................................3

## PRELIMINARY STATEMENT

On August 31, 2025, Plaintiff Michael Wildey was involved in an interaction with Defendants Corporal Bradley Ellmann and Sergeant Nicolas Salamone of the Chester Township Police Department at the scene of a fatal motor vehicle accident. This brief interaction involved Plaintiff photographing the scene of the accident, and lasted approximately 3 minutes in total. Nearly 6 months later, on February 20, 2026, Plaintiff filed a verified complaint and moved for injunctive relief, both preliminary and final injunctions, in a hearing on the merits.

As will be more fully explained below, Plaintiff is not entitled to his injunctive relief from this singular, discrete interaction approximately 6 months ago. He has not made the necessary showings to obtain this relief, and in light of significant facts that remain to be developed, summary judgment relief should be denied as well and Defendants permitted to file an answer.

**COUNTERSTATEMENT OF FACTS**

On August 31, 2025, Sgt. Salamone and Cpl. Ellmann were called to the scene of a fatal motor vehicle accident  as part of the Chester Township Police Department's investigation into that fatal accident.  See Plaintiff's Exhibit A, "Body Worn Camera of Cpl. Ellmann"; Plaintiff's Exhibit B, "Body Worn Camera of Sgt. Salamone."  During his investigation, Sgt. Salamone became aware that a civilian—later identified as Plaintiff—who was taking pictures at the scene for an unknown amount of time had identified himself as a fireman from a "local town." See Exhibit B, 00:00:28-00:00:38.  Sgt. Salamone stated that Plaintiff had been asking specific questions about the Chester Township Police Department's response to and/or investigation of the motor vehicle accident, such as whether or not the Major Crimes Unit would become involved.  Ibid.

Sgt. Salamone and Cpl. Ellmann thereafter approached Plaintiff, each activating their body worn camera.  Cpl. Ellmann asked if Plaintiff had been taking photographs of the scene, and then requested Plaintiff's phone for evidence related to the fatal accident.  See Exhibit A, 00:00:29-00:00:36.  Plaintiff responded "Brad, I'm not giving you my phone," and instead offered to delete the pictures; Cpl. Ellmann agreed, and Plaintiff deleted the pictures of the scene that he had on his phone, showing each picture to Cpl. Ellmann as he deleted them.  See Exhibit

2

A, 00:00:36-00:01:15.  Once the pictures were seen by Cpl. Ellmann and deleted by Plaintiff, Cpl. Ellmann turned back to the scene, stating "alright, he can leave." See Exhibit A, 00:01:16.  Both officers walked back to the scene to continue their investigation.    See Exhibit A, 00:01:16-00:01:19; see Exhibit B, 00:01:28-00:01:30.  Plaintiff was never touched, his phone never taken from him, he was not physically restrained, and he was not arrested.

Sgt. Salamone's body worn camera reflects that another officer at the scene made a remark commenting on whether or not Plaintiff's vehicle was illegally parked, see Exhibit B, 00:02:05-00:02:06, to which Salamone responded that he would "have to look up the ordinance," see Exhibit B, 00:02:06-00:02:11.  At no point was Plaintiff cited with or threatened with a parking violation.  Sgt. Salamone then received a radio transmission indicating that additional resources were coming to the scene.  See Exhibit B, 00:02:30-00:02:35.  Sgt. Salamone then walked back over to Plaintiff and advised him that he needed to move his vehicle based on the arrival of additional resources.  See Exhibit B, 00:02:37-00:02:39. Plaintiff obliged, and Salamone began moving the traffic cones out of the way for the incoming resources.  See Exhibit B, 00:02:39-00:03:48.

On February 20, 2026, approximately 6 months after this interaction, Plaintiff filed the instant lawsuit.  See D.E. 1.  He claims violations of his First Amendment rights, Fourth Amendment rights, and a Monell claim against Chester Township.

# LEGAL ARGUMENT

## POINT I

## PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION

Plaintiff requests that this Court enter a preliminary injunction against Defendants in this matter, vaguely enjoining them from further violating his civil rights.  It is respectfully submitted that, on Plaintiff's showing in his verified complaint and motion papers, he is not entitled to a preliminary injunction.

"A preliminary injunction 'is an extraordinary remedy . . . which should be granted only in limited circumstances.'"  Holland v. Rosen, 895 F.3d 272, 285 (3d Cir. 2018) (quoting Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994)).  Such relief is not issued unless "the movant, by a clear showing, carries the burden of persuasion."  Ibid. (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis omitted)).  A movant must show four factors:

> (1) a reasonable likelihood of success on the merits; (2) irreparable harm to the applicant; (3) whether the denial of a preliminary injunction would injure the moving party more than the issuance of an injunction would injure the non-moving party; and (4) whether the grant of relief would serve the public interest.
>
> [Id. at 285-86.]

The first two factors are "prerequisites for a movant to prevail."  Id. at 286.  "[A] district court—in its sound discretion—should balance those four factors so long as

4

the party seeking the injunction meets the threshold on the first two." Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017).

Here, Plaintiff fails to meet both preliminary prongs. First, Plaintiff does not show a likelihood of success on the merits, relying on a misreading of Reilly to claim that he need not meet the initial prong. In Reilly, the Court held that in "First Amendment cases where 'the [g]overnment bears the burden of proof on the ultimate question of [a statute's] constitutionality, [plaintiffs] must be deemed likely to prevail [for the purposes of considering a preliminary injunction] unless the [g]overnment has shown that [plaintiffs] proposed less restrictive alternatives are less effective than [the statute]." 858 F.3d at 180 (alterations in original) (emphasis added) (quoting Ashcroft v. ACLU, 542 U.S. 656, 666 (2004)). Plaintiff is not challenging a statute in this matter, and therefore Reilly's specific exception in the burden-shifting framework does not apply to him.

Instead, the first prong requires a showing that the movant "demonstrate that [he] can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)." Ibid. (quoting Reilly, 858 F.3d at 179). Regarding his likelihood of success, Plaintiff points out the public's "right to record police officers conducting official police activity in public areas" is protected by the First Amendment, see Morales v. Maxwell, 600 F. Supp. 3d 497, 512 (D.N.J. 2022), subject to reasonable time, place, and manner restrictions. Some of those restrictions are embodied in the Attorney General's Directive No.

2021-11, titled "First Amendment Right to Observe, Object to, and Record Police Activity," which provides guidance to the law enforcement agencies and personnel throughout the State regarding the conduct of bystanders at a scene. See D.E. 1-4, Plaintiff's Exhibit C.

The Directive states that "[a] member of the public who is present but not taking part in a situation or event, i.e., a 'bystander,'" has a right to record, witness, observe, or otherwise comment on law enforcement officers "conducting official duties in public." Ibid. So long as the bystander "has a legal right to be present and does not interfere with an officer's safety or lawful duties," law enforcement may not tell a bystander recording is not permitted, perform an investigatory stop or arrest, or demand the reason for recording, among other proscriptions. Ibid. However, "[n]othing in this Directive prohibits officers from questioning or detaining for a reasonable period of time any individual they reasonably suspect has committed, is committing, or is about to commit a crime." Ibid. Further, law enforcement "may direct the bystander to move to a position that will not interfere" with law enforcement activities if the bystander is "recording police activity from a position that materially impedes or interferes with . . . [officers'] ability to perform their duties." Ibid.

Here, Sgt. Salamone's statements on the body worn camera footage indicate that an earlier interaction between Plaintiff and the police occurred which was not captured by the body worn camera in which Plaintiff was questioning the police

6

about their response and/or investigation into the accident.   Sgt. Salamone's statements raise legitimate questions as to the nature of that prior interaction and its impact on Sgt. Salamone's subjective mindset regarding whether or not Plaintiff was improperly interfering or impeding the officers' investigation of a fatal car accident.  Plaintiff also identified himself as a firefighter.  Based on Plaintiff taking pictures at the scene of a fatal accident, there were questions regarding a potential violation of Cathy's Law.  See N.J.S.A. 2A:58D-2(b) (prohibiting first responders from photographing victims of motor vehicle accidents).

In light of this, and as can be seen in Cpl. Ellmann's body worn camera footage of the brief encounter, he approaches Plaintiff, asks if he was taking photographs of the scene, and requests his phone for potential evidence.  See D.E. 1-4, Plaintiff's Exhibit C ("Nothing in this Directive prohibits officers from questioning or detaining for a reasonable period of time any individual they reasonably suspect has committed, is committing, or is about to commit a crime.").  Plaintiff addresses Cpl. Ellmann by his first name, and offers to delete the photographs, showing Cpl. Ellmann the photographs from the scene that he had taken prior to each deletion.  Once Cpl. Ellmann had viewed the photographs, and Plaintiff deleted them, Cpl. Ellmann walked away.

On these facts, Plaintiff has not demonstrated a likelihood of success on the merits.  The conduct of the officers, in light of the circumstances over the course of approximately 2 total minutes, showed that they were acting in accordance with the

7

Attorney General's Directive.  The limited factual record shows that two officers' actions were taken with reasonable suspicion based on the information known to them, and after a short interaction, the situation resolved.  Plaintiff was not arrested or physically restrained, his phone was never taken from him, he was not threatened with citation or any type of criminal violation.  Thus, Plaintiff has not shown a success on the merits.

Even if the Court determines that Plaintiff has demonstrated a likelihood of success on the merits, he has not shown irreparable harm.  "While other circuits relax the irreparable harm requirement in First Amendment cases, our Court requires a First Amendment plaintiff seeking a preliminary injunction to prove irreparable harm."  Conchatta, Inc. v. Evanko, 83 Fed. Appx. 437, 442 (3d Cir. 2003).  To show such irreparable harm, a plaintiff must show "a chilling effect on free expression," ibid. (quoting Hohe, 868 F.2d at 72-73), a burden met by showing "a '"real or immediate"' danger to their rights 'in the near future,'" ibid. (quoting Anderson v. Davila, 37 V.I. 496, 164 (3d Cir. 1997)); see also Elrod v. Burns, 427 U.S. 347, 373 (1976) (noting that the plaintiffs' First Amendment injuries were "both threatened and occurring at the time of respondents' motion").  In Conchatta, the plaintiffs "did not show that there was a real or immediate threat to their own First Amendment rights" because "the plaintiffs ha[d] never been cited for violating the statute or regulations, and there [was] no imminent threat of such action."  83 Fed. App'x at 442-43.

8

Here, Plaintiff has not shown the irreparable harm necessary for a preliminary injunction, as there is no real or immediate danger to his rights in the near future. Anderson, 37 V.I. at 164. As in Conchatta, Plaintiff was not cited for violating any statute, was not arrested, and no threat made to arrest or cite him for any crime in the future. Indeed, and as noted by Plaintiff in his moving brief, this matter occurred in August 2025, with the request for a preliminary injunction made approximately 6 months later in late February 2026. Such delay in filing in and of itself shows no real or immediate danger to his rights, as nothing has happened to Plaintiff in the interim. That Plaintiff's delay was due to obtaining the body worn camera footage is of no moment: acquiring same was not necessary for requesting or obtaining injunctive relief in this matter.

Additionally, this matter is not a case where Plaintiff is challenging a statute or ordinance that *would* subject him to criminal penalty should he continue his course of action. Indeed, Plaintiff cites to both First Amendment jurisprudence and the Attorney General's Directive that protect his rights subject to time, place, and manner restrictions. Nor is this a case involving proofs where Plaintiff himself is a particular target of police action. See, e.g., Morales, 600 F. Supp. 3d at 506-07 (discussing two officers having alleged resentment towards the plaintiff specifically, in addition to an internal memorandum regarding the plaintiff and his actions). Therefore, it is respectfully submitted that Plaintiff has not met his

burden of showing irreparable harm and his request for injunctive relief should be denied.

Should the Court continue in its balancing inquiry, Plaintiff fails to show that not issuing the injunction would injure him more, or that the injunction serves the public good. As noted above, Plaintiff has been injunction-free since August 2025 with no citations, arrests, or any issue in the intervening 6 months. Thus, one can conclude that should no injunction issue, the status quo is not harmful to Plaintiff. Conversely, entry of a preliminary injunction is likely to harm Defendants both reputationally and practically in their interactions with the public during the execution of their duties for an indeterminate period of time moving forward. Finally, this injunction is not in the broader public interest, merely Plaintiff's own interest. There has been no showing or inclination that other members of the public are at risk of, or have had, their constitutional rights allegedly being violated in a similar manner. See, e.g., Lewis v. Kruger, 446 F.2d 1343, 1345 (3d Cir. 1971) (remanding for hearing on preliminary injunction where the plaintiffs supported their allegations with "25 affidavits" alleging a pattern of conduct across similarly situated individuals). In the absence of such critical facts, it cannot be said that Plaintiff's interests represent the broader public interest.

Therefore, in light of the above, it is respectfully submitted that Plaintiff's request for a preliminary injunction be denied.

10

## POINT II

### SUMMARY JUDGMENT AT THIS STAGE IS PREMATURE

Plaintiff argues that this Court should proceed with this matter as if it was presented at the summary judgment stage due exclusively to the body worn camera footage. It is respectfully submitted that, while certainly helpful, the body worn camera footage is not dispositive of all discovery in this matter and that Plaintiff's request for summary judgment be denied.

As noted above and throughout, there are significant facts to be developed that may materially conflict with Plaintiff's version of events once discovery is undertaken. Chief among them is the scope and content of Plaintiff's initial interaction with law enforcement that was not captured by Sgt. Salamone's body worn camera. In addition to discovery related to that conversation, the recollection of the other hitherto unidentified officers also at the scene is relevant to this matter, to the extent that they are able to recall Plaintiff, his actions, and his interactions with Sgt. Salamone and Cpl. Ellmann at the scene that day. Depositions of Sgt. Salamone and Cpl. Ellmann are also necessary to determine their thought processes, knowledge, and evaluation of the circumstances undergirding their reasonable beliefs per the terms of the Attorney General's Directive. Finally, regarding Plaintiff's Monell claim, it is clear that the verified complaint contains

11

no facts supporting this claim beyond conclusory allegations, and as such summary judgment as to that claim is inappropriate.

It is, therefore, respectfully submitted that summary judgment on Plaintiff's verified complaint alone would be premature in light of the outstanding discovery that could materially conflict with Plaintiff's version of events.

## <u>CONCLUSION</u>

In light of the foregoing, Plaintiff's request for injunctive relief and for summary judgment should be denied, and Defendants should be permitted to file their answer and proceed with the normal course of litigation.

Respectfully submitted,

HOAGLAND, LONGO, MORAN,
  DUNST & DOUKAS, LLP
Attorneys for Defendants,
Sgt. Nicolas Salamone, Cpl, Bradley Ellmann and Chester Township


By: /s/ Jack M. Middough
        JACK M. MIDDOUGH

Dated: March 11, 2026

13